Clifford P. Bendau II (030204)
Christopher J. Bendau (032981)
THE BENDAU LAW FIRM PLLC
P.O. Box 97066
Phoenix, Arizona 85060
Telephone: (480) 382-5176
Facsimile: (602) 956-1409
Email: cliffordbendau@bendaulaw.com
       chris@bendaulaw.com
Attorneys for Plaintiff

UNITED STATES DISTRICT COURT

DISTRICT OF ARIZONA

| | |
|---|---|
| Brent Hanke,<br><br>            Plaintiff,<br><br>vs.<br><br><br>Vino Pinot Dining, LLC, d/b/a Salut Kitchen Bar, Anastasios Tirkas, and David Freedman,<br><br>            Defendants, | No. 2:15-CV-01873-SMM<br><br>**PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT** |

Plaintiff Brent Hanke ("Plaintiff") requests that the Court enter summary judgment in his favor and against Defendants[1] on Counts III, IV, and V (Fair Labor Standards Act (the "FLSA") claims) and Count VI (Arizona Wage Act (the "Act") claims) of the Complaint (Dkt. 1) (the "Complaint"). The undisputed facts show that Defendants were Plaintiffs' "employers" as defined by the FLSA, that Defendants are an enterprise engaged in commerce with annual gross sales of at least $500,000, and that Defendants failed to pay Plaintiff minimum and overtime wages during his employment. With no dispute of fact as to these issues, no reasonable juror could find in Defendants' favor. Defendants did not keep records sufficient to evidence the dates and times that Plaintiff attended required unpaid meetings, training, "cleaning parties," and other events.[2] Therefore, Plaintiff's estimates of his unpaid wages for these times are the only evidence

---

[1] "Defendants" refers to Vino Pinot Dining, LLC ("Vino Pinot"), Anastasios Tirkas ("Tirkas"), and David Freedman ("Freedman").

[2] In this Motion, unless otherwise specified, "unpaid meetings" refers to required unpaid staff meetings, manager meetings, training, "cleaning parties," and other events.

for the Court or jury to consider.

This is a straightforward case where Defendants employed Plaintiff for years but did not pay him minimum and overtime wages he earned in violation of the FLSA and the Act. Typically, the parties in such a case would at least have an argument over the amount of wages owed after liability is established. But here, there is no dispute. The evidence Plaintiff relies on in support of his request for summary judgment is primarily: (1) Defendants' Answers to the Complaint (Dkts. 7 and 9)[3]; (2) the testimony of Vino Pinot; (3) Defendants' written discovery responses; and (4) Plaintiff's damages charts showing his unpaid wages. The following Memorandum of Points and Authorities and Plaintiff's Separate Statement of Facts[4] filed concurrently supports this Motion.

## Memorandum of Points and Authorities

### I.  Standard of Review.

Summary judgment should be granted where there is "no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). "Rule 56(c) mandates entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986). The Court should grant summary judgment "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247 (1986).

---

[3]  Defendants Vino Pinot and Tirkas filed their Answer to the Complaint on November 10, 2015 (Dkt. 7). Defendant Freedman filed his Answer to the Complaint on November 30, 2015 (Dkt. 9). In his Answer, Defendant Freedman "join(ed) the Answer to Complaint filed by Defendants Anastasios Tirkas and Vino Pinot Dining, LLC, d/b/a Salut Kitchen Bar as if his own." (Dkt. 9). Therefore, the terms "Answer" and "Dkt. 7" refer to both Answers filed by Defendants Vino Pinot and Tirkas, and Freedman, respectively.

[4]  In this Motion, Plaintiff's Separate Statement of Facts is referred to as the "SOF."

"Furthermore, the party opposing summary judgment 'may not rest upon the mere allegations or denials of [the party's] pleading, but…must set forth specific facts showing that there is a genuine issue for trial.'" *Juarez v. CC Servs., Inc.*, 434 F. Supp. 2d 755, 758 (D. Ariz. 2006) (citation omitted). "There is no issue for trial unless there is sufficient evidence favoring the non-moving party; if the evidence is merely colorable, or is not significantly probative, summary judgment may be granted." *Anderson*, at 247. There must be sufficient evidence favoring the non-moving party for a jury to return a verdict for that party in order to avoid summary judgment. *Id*. at 249. Here, no reasonable juror could find for Defendants on any of Plaintiff's claims at issue in this Motion for Summary Judgment because Defendants cannot present any evidence to create a dispute of fact necessitating trial.

## II. Relevant Facts.

Defendant Vino Pinot LLC ("Vino Pinot" or "Salut") does business as Salut Kitchen Bar, a restaurant located in Tempe, Arizona. SOF, ¶ 1. Defendants Anastasios Tirkas and David Freedman (collectively, including Vino Pinot, "Defendants"), are, and were for the duration of Plaintiff's employment at Salut, the managing members and owners of Vino Pinot. *Id*., ¶ 2. Plaintiff, Brent Hanke ("Plaintiff"), worked for Defendants as a bartender, bar-back, and server from approximately March 1, 2013 to approximately March 31, 2015. *Id*., ¶ 3.

Throughout Plaintiff's time working at Salut, Defendants had the authority to hire and fire Plaintiff, supervised and controlled Plaintiff's work schedules or the conditions of Plaintiff's employment, determined Plaintiff's rate and method of payment, and maintained employment records in connection with Plaintiff's employment. *Id*., ¶¶ 4-15.

Throughout Plaintiff's employment with Defendants, Plaintiff was paid at a tip credit rate. *Id*., ¶¶ 16-17. With the exception of the workweeks of the paychecks dated April 15 and April 29, 2013, Defendants never paid any wage whatsoever to Plaintiff for any time he spent working in excess of 40 hours, and on occasion deducted time from his

3

non-overtime workweeks. *Id.*, ¶¶ 19-22. Instead, for any workweek during which Plaintiff worked more than 40 hours, Defendants deleted all of that time such that Plaintiff's pay records would reflect that he worked no more than 40 hours that week. *Id.*

Defendants required Plaintiff to attend mandatory meetings and other events for which Defendants did not compensate Plaintiff whatsoever. *Id.*, ¶¶ 23-28. Such events included periodic unpaid staff meetings; weekly unpaid manager meetings; and monthly unpaid "cleaning parties," which were meetings that Defendants required the entire Salut staff to attend for the purpose of cleaning the entire restaurant. *Id.* Defendants did not generally record the dates or times of these unpaid meetings, but they did schedule them via posts contained in Defendants' "Vino Pinot Employees" Facebook group. *Id.*

Defendants also required Plaintiff to reimburse them for broken dishes and cash register shortages. *Id.*, ¶¶ 29-32. Per Defendants' policy and practices, any time that a dish broke under Plaintiff's watch, Defendants would deduct certain hours from Plaintiff's paychecks that Defendants, in their sole discretion, determined were commensurate with the value of the broken dish. *Id.* In the event of a register shortage, Defendants would require Plaintiff to reimburse the shortage from his tips. *Id.*

Neither Defendants nor any of their agents or representatives ever informed Plaintiff of the tip credit provisions of 29 U.S.C. § 203(m) and 29 C.F.R. § 531.59. *Id.*, ¶ 37. This means that Defendants never informed Plaintiff that tips Plaintiffs earned would be credited toward their minimum wage obligations. *Id.*, ¶¶ 38-42. Aside from a single 2014 Arizona wage poster, Defendants have no written evidence in their possession to support that Salut informed Plaintiffs of their intent to impose a tip credit on Plaintiffs' wages in compliance with 29 C.F.R. 531.59, *id.*, nor does Salut have knowledge of anyone with personal knowledge to support such a contention. *Id.*, ¶ 40. Rather, Defendants rely exclusively on their bald assertions otherwise. *Id.*, ¶¶ 38-42.

Defendants, by virtue of the time clock manipulation and unpaid meetings

4

discussed above, paid no overtime whatsoever to Plaintiff for any time he spent working in excess of 40 hours in a given workweek. *Id.*, ¶ 22.

Finally, Defendants do not have records of dates or times that Plaintiff spent attending unpaid meetings. *Id.*, ¶¶ 43-44. Defendants did not use any method for recording such dates or times. *Id.* In fact, Plaintiff was instead prohibited from clocking in at all during these times. *Id.*, ¶ 24. Plaintiff, to the best of his memory and experience, reconstructed the dates and hours he spent attending unpaid meetings, as shown in the charts provided with his Affidavit. *Id.*, ¶ 45.

### III. Argument.

#### A. Vino Pinot, Tirkas, and Freedman are liable to Plaintiff under the FLSA.

All Defendants are liable to Plaintiff for their FLSA violations. To prove FLSA minimum wage liability, a plaintiff must show that: (1) she was employed by the defendant during the relevant time period, (2) in the plaintiff's work for the defendant, she was employed by an enterprise engaged in commerce or the production of goods for commerce with annual gross sales of at least $500,000; and (3) the defendant did not pay the plaintiff minimum wage for all hours she worked in one or more workweeks. *Quinonez v. Reliable Auto Glass, LLC*, 2012 WL 2848426, *1-2 (D. Ariz. July 11, 2012). In order to prove overtime liability under the FLSA, the third element requires that the plaintiff prove that the defendant did not pay overtime pay for all hours the plaintiff worked in excess of 40 in one or more workweeks. *Id.*; *see also* 29 U.S.C. § 207. Here, there is no dispute of material fact: Defendants are liable to Plaintiff under the FLSA.

##### 1. Defendants are FLSA "employers" who employed Plaintiff.

Under the FLSA an "employer" is "any person acting directly or indirectly in the interest of an employer in relation to an employee…." 29 U.S.C. § 203(d). An entity or individual is an employer under the FLSA where that entity or individual has: (1) the power to hire and fire employees, (2) the power to supervise and control employee work schedules, (3) the power to determine salaries, and (4) the responsibility to maintain

5

employment records. *Bonnette v. California Health and Welfare* Agency, 704 F.2d 1465, 1475 (9th Cir. 1983).[5]  Here, there is no question that all Three Defendants employed Plaintiffs, as that term is defined under the FLSA.  SOF, ¶¶ 4-15.

### 2. Defendants are an Enterprise Engaged in Commerce that had Annual Gross Sales of at Least $500,000.

The FLSA defines an "enterprise engaged in commerce or the production of goods for commerce" to include "an enterprise whose annual gross volume of sales made or business done is not less than $500,000." 29 U.S.C. § 203(s)(1)(A)(ii); *see also Zorich v. Long Beach Fire Dept. and Ambulance Service, Inc.*, 118 F.3d 682, 684 (9th Cir. 1997). Here, the Answer admits that: "Plaintiffs, in their work for Defendant Sydney Rose, were employed by an enterprise engaged in commerce that had annual gross sales of at least $500,000."  (Dkt. 7, ¶ 19).

### 3. Defendants failed to pay Plaintiff minimum wage during his employment.

The FLSA requires employers to pay covered employees a minimum hourly wage of $7.25. 29 U.S.C. § 206(a).  The Act, moreover, requires that employers pay a minimum wage of $8.05 ($8.05 in 2015, $7.90 in 2014, and $7.80 in 2013).  Arizona Revised Statutes ("A.R.S.") § 23-363.  The FLSA's "savings clause" provides that the FLSA's protections are the absolute minimum and requires employers to adhere to their state's more protective wage and hour laws. *See* 29 U.S.C. § 218(a).  Therefore, both the FLSA and the Act allow Arizona employers to take a maximum tip credit of $3.00 against their minimum wage obligations to tipped employees. *Id. See also* 29 U.S.C. §

---

[5] The Ninth Circuit has also held that the FLSA's definition of "employer" is not limited by the common law concept of "employer" and "is to be given an expansive interpretation in order to effectuate the FLSA's broad remedial purposes." *Real v. Driscoll Strawberry Assocs.*, 603 F.2d 748, 754 (9th Cir. 1979). Whether an employer-employee relationship exists does not depend on "isolated factors but rather upon the circumstances of the whole activity." *Rutherford Food Corp. v. McComb*, 331 U.S. 722, 730 (1947). "The touchstone is the 'economic reality.'" *Bonnette v. California Health and Welfare Agency*, 704 F.2d 1465, 1469, *quoting Goldberg v. Whitaker House Cooperative, Inc.*, 366 U.S. 28, 33 (1961).

203(m); *see also* A.R.S. § 23-363(C); *see also Montijo v. Romulus Inc.*, No. 2:14-cv-00264-SMM 2015 WL 1470128, *8 fn. 4 (D. Ariz. March 30, 2015) ("Arizona has enacted a higher tip credit for employees such that the difference between the wage specified in paragraph (1) of 29 U.S.C. § 203(m) and the wage in effect under § 201(a)(1) is effectively $3.00. A.R.S. § 23-363(C)").

      **a.**    **Defendants' pay practices with respect to Plaintiff violated the FLSA's minimum wage provisions as a matter of law.**

Defendants regularly and consistently required Plaintiff to perform work without compensating him for that time by (1) manipulating his time punches to reflect fewer hours on his paycheck than he actually worked, (2) requiring him to attend unpaid meetings, and (3) requiring him to reimburse Defendants for broken dishes and register shortages. Because Plaintiff was a sub-minimum wage employee, *any* reduction in his pay would have necessarily brought his pay below the statutory minimum, in violation of the FLSA and the Act. 29 C.F.R. § 531.35; *see also Mariche v. Phoenix Oil, LLC*, 2014 WL 2467964 *6 (D. Ariz. June 3, 2014).

      **i.**    **Defendants manipulated Plaintiff's time records, which deprived him of minimum wage as a matter of law.**

Throughout Plaintiff's entire employment, with the exception of two pay periods, Defendants deleted all time that Plaintiff clocked in excess of 40 hours in each and every workweek he in fact worked more than 40 hours for them. ¶¶ 19-22. The time that Plaintiff clocked while working for Defendants, as reflected in the time clock records that Defendants produced in discovery, differs vastly from the wages Defendants paid Plaintiff, as reflected in the payroll records that the Parties produced in discovery. *Id.*

On one hand, the *payroll* records that each party produced show that no dispute exists as to the actual amount of money that Defendants paid Plaintiff during his entire employment. *Id*. On the other hand, when compared to the *time clock* records that Defendants produced, the payroll records show that Defendants manipulated Plaintiff's

7

time records (to the exact hundredth of an hour in some instances) to delete any time in excess of 40 hours in every workweek that Plaintiff worked more than 40 hours. *Id*.

Take, for example, the pay period of April 7, 2014 through April 20, 2014. During the week of April 7, Plaintiff's time clock punches show that he worked a total of 57.48 hours (17.48 hours of overtime). *Id*. The time clock punches for both weeks show that he worked a total of 90.06 hours. *Id*. However, Defendants' payroll journal shows that Plaintiff was only compensated for 72.58 hours. *Id*. The difference is 17.48 hours–the exact amount of time over 40 hours that Plaintiff worked. *Id.*

The pay period of July 1, 2013 through July 14, 2013 shows similar manipulation. During the week of July 8, 2013, Plaintiff's time clock punches show that he worked a total of 42.62 hours (2.62 hours of overtime). *Id*. The time clock punches for both weeks show that he worked a total of 60.64 hours. *Id*. However, Defendants' payroll records show that he was only compensated for 58.02 hours. *Id*. The difference is 2.62 hours–the exact amount of time over 40 hours that Plaintiff worked.

This practice was not limited to overtime–in many weeks, Defendants even deleted certain hours from the regular, 40-hours-or-less workweeks that Plaintiff worked.

For example, during the pay period of September 23, 2013 through October 6, 2013, Plaintiff's time clock punches show that he worked 46 hours in the week of September 23, 2013 and 40.78 hours in the week of September 30, 2013. *Id*. This totals 86.78 hours worked, including 6.78 hours of overtime. *Id.* However, Defendants' payroll records and Plaintiff's pay check show that he was only compensated for 76.39 hours. *Id*. That difference is 10.39 hours–6.78 hours of unpaid overtime and even 3.61 hours of unpaid minimum wage.

This evidence reveals consistent manipulation by Defendants of Plaintiff's wages for the entire duration of his employment. There can be no dispute that Defendants deprived Plaintiff of minimum wage and violated the FLSA as a matter of law.

//

//

### ii. Defendants required Plaintiff to attend unpaid meetings, which deprived him of minimum wage as a matter of law.

Throughout Plaintiff's employment, Defendants required Plaintiff to attend unpaid meetings. SOF ¶ 23. Defendants' policy and practice prohibited employees from clocking in while attending these meetings. *Id.* at ¶ 24. Defendants, by their own testimony, have admitted that these meetings were mandatory. *Id.* at ¶ 23. If an employee had a prior obligation that conflicted with a scheduled meeting, she was required to obtain approval to be excused from the meeting. *Id.* If an employee missed a meeting without approval, she was subject to discipline, including but not limited to, a verbal warning and a write up. *Id.*

Defendants typically notified employees of these meetings via Facebook, by posting the date and time of the meeting in the "Vino Pinot Employees" Facebook group. *Id.* at ¶ 28. These posts comprise the only available record of the dates or times of these meetings. In addition to the Facebook posts, Defendants provided testimony evidencing the dates, times, and frequency of certain meetings. *Id.* at ¶¶ 27-28. For example, Tirkas testified in his corporate capacity that they held weekly manager meetings on Monday mornings at approximately 8:30 am, and that during his employment, Plaintiff attended manager meetings. *Id.* at 23. Tirkas also testified that Defendants held cleaning parties approximately once per month, and they would last up to four hours. *Id.* Attendance at these cleaning parties was mandatory. *Id.*

Comparing these Facebook posts with Plaintiff's time clock records reveals that Plaintiff was not clocked in during the majority[6] of the dates and/or times of these meetings, even on dates when Plaintiff was the individual conducting training. *Id.* at 25. Defendants have produced zero evidence to support their claim that Plaintiff's lack of time clock punches means he was not present. In the absence of such evidence or any records of who attended these meetings, the Court must reasonably infer that Plaintiff

---

[6] The evidence reveals that, during one training session on March 23, 2014, Plaintiff was clocked in. However, this is because Plaintiff worked prior to the meeting and forgot to clock out. *See* SOF ¶ 25.

attended these meetings without clocking in, rather than that Plaintiff attended no mandatory meetings over the course of his two years of employment with Defendants and was never disciplined for it. The evidence reveals Defendants' consistent failures to pay Plaintiff for time spent attending unpaid meetings for his entire employment. There is no dispute then that Defendants deprived him of minimum wage as a matter of law.

> iii. **Defendants required Plaintiff to reimburse the restaurant for breakage and register shortages, which deprived him of minimum wage as a matter of law.**

Required reimbursements from employees are impermissible if the deductions drop an employee's salary below the statutory minimum. 29 C.F.R. § 531.35; *see also Mariche v. Phoenix Oil, LLC*, 2014 WL 2467964 *6 (D. Ariz. June 3, 2014) (*citing Mayhue's Liquor Stores, Inc.v. Hodgson*, 464 F.2d 1196 (5th Cir. 1972)). Throughout Plaintiff's employment, Defendants maintained several policies requiring employees to reimburse the restaurant, including reimbursing the restaurant for breakage and register shortages. SOF ¶¶ 29-32. As a result of Defendants requiring such reimbursements from the wages of sub-minimum wage employees, Plaintiff's pay was reduced below the statutory minimum as a matter of law.

In addition to Defendants' written policy of requiring reimbursement for breakage, Tirkas, in his corporate capacity, testified that it was Defendants practice to require employees to reimburse the restaurant for breakage. *Id.* at ¶¶ 29-30. If an employee broke an item, he was required to write down on Defendants' breakage form his name, the item he broke, the date, and the cost of the item as listed on a corresponding form. *Id*. In order to collect this money from employees, Defendants reduced the number of hours the employee worked that Defendants determined was commensurate with the value of that item. *Id*. Plaintiff was both subject to this policy and required to reimburse the restaurant on several occasions. *Id*. As a result, Defendants reduced Plaintiff's pay below the statutory minimum, and Defendants violated the FLSA and the Act.

Further, Defendants required employees, including Plaintiff, to reimburse the

restaurant for cash register shortages. *Id.* at ¶¶ 31-32. In the event that a register was short, Defendants would deduct the shortage from the employee's tips from that night or the next night, depending on when the discrepancy was discovered. *Id*. On multiple occasions throughout his employment with Defendants, Plaintiff was required to reimburse the restaurant for a cash register shortage from his tips. *Id*. As a result, Defendants failed to comply with § 203(m), were not entitled to use a tip credit, and therefore violated § 206(a). 29 U.S.C. § 203(m); 29 C.F.R. § 531.35.

> iv. **Plaintiff was deprived of minimum wage for two workweeks because his paycheck shows that his hourly pay plus tips falls short of minimum wage, and Defendants did not make up the difference.**

During at least two workweeks, Plaintiff did not receive sufficient tips to bring his hourly wage to the applicable minimum. On June 12, 2014, Plaintiff received a paycheck for the pay period of May 19, 2014 through June 1, 2014. SOF at ¶¶ 33-36. The paycheck shows that Plaintiff worked a total of 78 hours at a rate of $5.10 per hour and that Plaintiff received $8.01 in tips for that two-week pay period. Based on those hours, Plaintiff should have received at least $616.20 for the pay period ($7.90 per hour x 78 hours). However, the total for the paycheck was only $405.81. *Id*. Defendants have produced no evidence to show that they made up the difference as required under Federal and Arizona law. *Id*. Tirkas even admitted that Plaintiff did not receive minimum wage for that pay period and that Defendants did not make up the difference. *Id*. Therefore, it cannot be disputed that for the workweeks of May 19, 2014 through June 1, 2015, Defendants failed to pay Plaintiff minimum wage in violation of the FLSA and the Act.

> b. **Defendants cannot meet their burden to show that they properly took a tip credit because they failed to inform Plaintiff of the FLSA's tip credit provisions.**

Defendants have not, and cannot, satisfy their burden of proving that they properly imposed a tip credit on Plaintiffs. 29 U.S.C. § 203(m) states that the tip credit:

> shall not apply with respect to any tipped employee unless such employee has been informed by the employer of the provisions of this subsection, and all tips received by such employee have been retained by the employee, except that this

11

subsection shall not be construed to prohibit the pooling of tips among employees who customarily and regularly receive tips.

29 U.S.C. § 203(m); s*ee also Oregon Restaurant and Lodging Ass'n v. Perez*, 816 F.3d 1080, 1082 (9th Cir. 2016) ("Section 203(m) obligates employers who take a tip credit to: (1) give notice to its employees, and (2) allow its employees to retain all tips they receive, unless such employees participate in a valid tip pool").

In the context of the tip credit exception, federal courts have held that "[i]t is the employer's burden to show that it has satisfied all the requirements for tip-credit eligibility." *Perez v. Lorraine Ent., Inc.*, 769 F.3d 23, 27 (1st Cir. 2014); *see also Montano v. Montrose Rest. Associates, Inc.*, 800 F.3d 186, 189 (5th Cir. 2015); *Barcellona v. Tiffany English Pub, Inc.*, 597 F.2d 464, 467 (5th Cir.1979).

Under the FLSA and its supporting regulations, tips are not wages paid by the employer. 29 C.F.R. § 531.52; *see also Romero v. Top-Tier Colorado LLC*, --- F.3d ----, 2017 WL 892340 (10th Cir. March 7, 2017) (reversing and remanding due to the district court's conflation of "tips earned" versus "wages paid"). While tips can be used as a credit toward the employer's minimum wage obligation, the total wages paid to a tipped employee by the employer utilizing the tip credit is always less than the full minimum wage. 29 U.S.C. § 203(m). Thus, the relevant inquiry is whether the employer is entitled to take the tip credit in the first place.

Here, Defendants were not entitled to take the tip credit against any of the hours that Plaintiff worked each week because the undisputed facts show that Defendants failed to inform Plaintiff of the provisions of 29 U.S.C. § 203(m), which was sufficient to preclude Defendants from imposing a tip credit upon Plaintiffs' wages.

The FLSA requires an employer to inform its tipped employees of its "tipped employee" provisions prior to taking a tip credit. 29 U.S.C. § 203(m). 29 C.F.R. § 531.59(b) sets forth specific provisions of which an employer of tipped employees must inform such tipped employees prior to imposing the tip credit. *See* 29 C.F.R. § 531.[7]

---

[7] While the FLSA does not require written tip credit notice, Arizona law does. *See* Arizona Administrative Code ("A.A.C.") § R20-5-1207(C) ("Upon hiring or assigning an

Defendants designated Tirkas to testify specifically as to "Vino Pinot Dining, LLC's efforts…to comply with the tip credit notice requirements or provisions of 29 U.S.C. § 203(m) and 29 C.F.R. § 531.59." Dkt. 31-1, p. 2-3, ¶ 5. Tirkas testified in his corporate capacity for Vino Pinot that he had no personal knowledge of any individual notifying Plaintiff of the tip credit provisions of the FSLA, nor of any documentation that evidence that Plaintiff was notified of the tip credit provisions of the FLSA. SOF ¶¶ 37-42. Absent any other probative evidence, Defendants' unsupported assertion that it was their policy to give employees notice of the tip credit provision of the FLSA is insufficient evidence to create an issue of fact for trial.

The only document Defendants produced to support the contention that they gave Plaintiff proper notice of the tip credit provisions of the FLSA is a single Arizona state wage poster from 2014. *Id.* ¶ 40. While Defendants claim they do not keep old posters after receiving the updates, the photograph Defendants provided of the 2014 Arizona wage poster was disclosed on February 12, 2016 with Defendants' Initial Disclosures. *Id.* Defendants have produced evidence sufficient to show only that they possessed a 2014 Arizona Labor Law poster in 2016. *Id.* Based on these undisputed facts, Defendants cannot meet their burden to show that they provided Plaintiff with FLSA-required tip credit notice per 29 U.S.C. § 203(m). No trier of fact or law could find otherwise.

### 4. Defendants' manipulation of Plaintiff's time records and requirement that he attend unpaid meetings conclusively establish they Defendants failed to pay overtime to Plaintiff for any time he worked in excess of 40 hours in a workweek.

The FLSA requires employers to pay covered, non-exempt employees one and one-half times their regular rates of pay for all time worked in excess of 40 hours per week. 29 U.S.C. §§ 206, 207. As shown in Section (III)(A)(3)(a)(i) of this Motion, Defendants deleted Plaintiff's time clock records for all time he worked in excess of 40

---

individual to a position that customarily and regularly receives tips, an employer intending to exercise a tip credit shall provide written notice to the employee prior to exercising the tip credit. Thereafter, the employer shall notify the employee in writing each pay period of the amount per hour that the employee takes as a tip credit.")

13

hours in any workweek, and did not pay him at all for required meetings and training. Plaintiff therefore hereby incorporates the facts and arguments contained in sections Section (III)(A)(3)(a)(i) of this Motion, above. SOF ¶¶ 19-22. Moreover, as shown below, Plaintiff's estimates of the dates and hours he spent at unpaid meetings clearly show that Plaintiff worked in excess of 40 hours per workweek during many workweeks of his employment with Defendants. *Id*. Therefore, Defendants did not pay overtime whatsoever to Plaintiff for any time he worked more than 40 hours in a given workweek.

### 5. Defendants' FLSA violations were willful, which gives Plaintiffs the benefit of a three-year statute of limitations.

Defendants' conduct in manipulating Plaintiff's time records was so egregious that there can be no other conclusion than that they acted willfully in failing to compensate Plaintiff minimum wage and overtime for the hours he worked. Ordinarily, an FLSA violation has a two-year statute of limitations. *See* 29 U.S.C. §§ 216(b) and 255(a). However, "a cause of action arising out of a willful violation may be commenced within three years after the cause of action accrued." *Id*. To show an employer's conduct was willful, an employee must show "'that the employer either knew or showed reckless disregard for the matter of whether its conduct was prohibited.'" *McLaughlin v. Richland Shoe Co.*, 486 U.S. 128, 133 (1988). The Ninth Circuit held that, "for §255's extension to obtain, an employer need not knowingly have violated the FLSA; rather, the three-year term can apply where an employer disregarded the very 'possibility' that is was violating the statute." *Alvarez v. IBP, Inc.*, 339 F.3d 894, 908-09 (9th Cir. 2003).

Here, Defendants did not simply neglect to pay money that was owed; rather, they fraudulently reduced the amount of hours Plaintiff actually worked in order to mask their post-40-hour-workweek overtime and minimum wage obligations. SOF at ¶¶ 19-22. As shown in Plaintiff's April 15 and 29, 2013 paychecks, Defendants were clearly aware of their obligation to pay overtime for all hours worked in excess of 40 hours per week, *Id.* at ¶¶ 19, 22, 47. Nonetheless, Defendants thereafter reduced Plaintiff's hours worked to

THE BENDAU LAW FIRM PLLC
P.O. Box 97066
Phoenix, AZ 85060

remove any hours over 40 per week to avoid paying Plaintiff overtime. *Id.* at 19-22. Additionally, Tirkas testified in his corporate capacity that he knew Plaintiff was a minimum wage worker, and that reducing Plaintiff's wages pursuant to their breakage and register shortage policies reduced Plaintiff's pay below minimum wage. *Id.* at ¶¶ 18, 49.

Defendants' awareness of the FLSA and the Act and efforts to comply with them show their knowledge of their requirements. Their failure to comply nonetheless shows reckless disregard for their mandates, if not actual knowledge. Therefore, Defendants' FLSA violations were willful, entitling Plaintiff to a three-year statute of limitations.

**B.  Plaintiff has the only evidence showing his unpaid wages for the required unpaid meetings Defendants required him to attend.**

Defendants failed to keep and maintain adequate and accurate records of the dates and times that Plaintiff attended meetings, training, and cleaning parties. The failure to keep and maintain adequate and accurate records for Plaintiff violates the FLSA and 29 C.F.R. § 516's strict recordkeeping requirements. *See also* 29 C.F.R. §§ 516.2, 516.5, and 516.6. The 9th Circuit has held that an employer's lack of recordkeeping cannot be used to "penalize the employee by denying him recovery on the ground that he is unable to prove the precise extent of uncompensated work." *Brock v. Seto*, 790 F.2d 1446, 1448 (9th Cir. 1986), *quoting Anderson v. Mt. Clemens Pottery Co.*, 328 U.S. 680 (1946). In *Anderson*, the Supreme Court held,

> When the employer has kept proper and accurate records the employee may easily discharge his burden by securing the production of those records. But where the employer's records are inaccurate or inadequate and the employee cannot offer convincing substitutes a more difficult problem arises. The solution, however, is not to penalize the employee by denying him any recovery on the ground that he is unable to prove the precise extent of uncompensated work. Such a result would place a premium on an employer's failure to keep proper records in conformity with his statutory duty; it would allow the employer to keep the benefits of an employee's labors without paying due compensation as contemplated by the Fair Labor Standards Act. In such a situation we hold that an employee has carried out his burden if he proves that he has in fact performed work for which he was improperly compensated and if he produces sufficient evidence to show the amount and extent of that work as a matter of just and reasonable inference. The

burden then shifts to the employer to come forward with evidence of the precise amount of work performed or with evidence to negative the reasonableness of the inference to be drawn from the employee's evidence. If the employer fails to produce such evidence, the court may then award damages to the employee, even though the result be only approximate.

*Anderson*, 328 U.S. at 687-88. *See also* A.R.S. § 23-364(D) (failure to maintain records showing hours worked "shall raise a rebuttable presumption that the employer did not pay the required minimum wage rate").

There is no dispute that Defendants have no time clock records evidencing the dates or hours of the unpaid meetings. SOF at ¶¶ 27, 43-44. The only records evidencing these dates and times are the posts made in the Vino Pinot Employee Facebook Group. *Id.* at ¶ 28. The posts in the Vino Pinot Employee Facebook group, combined with Defendants' own testimony, satisfy Plaintiff's burden to establish such dates and hours worked by just and reasonable inference, which Defendants will be unable to overcome. Plaintiff's estimates, provided with this Motion, show the amount and extent of the dates and times he spent attending these required, yet unpaid, meetings, and Defendants have no evidence to overcome Plaintiff's estimates. Therefore, Plaintiff is entitled to damages based on those estimates, even though they are approximate.

    **1.    Defendants have no records in their possession evidencing Plaintiff's unpaid meetings dates and times.**

Defendants testified that the unpaid meetings were mandatory. SOF at ¶ 23. Plaintiff attended all of the meetings. *Id.* at ¶¶ 23-25. As shown above in section (III)(A)(3)(a)(ii), Plaintiff was not clocked in for the majority of the unpaid meetings evidenced by the Facebook posts and Defendants' testimony. Further, Defendants have produced no evidence to show that Plaintiff did not attend the unpaid meetings. *Id.* at ¶¶ 26-28. The reasons proffered for this deficiency are irrelevant–all that matters is that the deficiency exists. Therefore, Defendants bear the heavy burden of overcoming the presumption of Plaintiffs' calculations and supporting testimony.

//

### 2. Plaintiff's estimates of his unpaid meetings establish the dates and hours he worked by just and reasonable inference.

Plaintiff's calculations, which are based upon the Facebook posts and Defendants' testimony, easily satisfy his obligation to show his unpaid meetings time by just and reasonable inference. Defendants bear the burden of overcoming Plaintiff's calculations. To hold otherwise would incentivize an employer to neglect its recordkeeping duties under federal law and "allow the employer to keep the benefit of an employee's labor without paying due compensation as contemplated by the [FLSA]." *Brock*, 790 F.2d at 1448. Fortunately, *Brock* holds, "[i]n such a situation, 'an employee has carried out his burden if he proves that he has in fact performed work for which he was improperly compensated and if he produces sufficient evidence to show the amount and extent of that work *as a matter of a just and reasonable inference.*'" *Id*. (emphasis added).

### 3. Defendants have no evidence to negate the reasonableness of the inference drawn from Plaintiff's estimates.

Defendants have provided no evidence to negate the reasonableness of Plaintiff's estimates. Defendant Tirkas, in his corporate capacity, testified that he has no reason to believe that any of the unpaid meetings referenced on the Vino Pinot Employees Facebook group did not actually take place. SOF at ¶ 25. He further stated that he has no reason to believe that Plaintiff did not attend any of the meetings. Defendants have no discipline forms for Plaintiff's failure to attend meetings. *Id*.

### C. The FLSA violations are deliberate and definitive, and the damages are easily quantifiable.

This case presents several instances of clear FLSA violations. Defendants knew that Plaintiff was earning less than minimum wage. SOF at ¶¶ 16-18. Defendants admit to paying Plaintiff for fewer hours than he worked. *See, e.g., id.* at 30. Defendants admit that the meetings, training, and cleaning parties were mandatory and that Plaintiff attended some of the weekly manager meetings, yet Plaintiff was not compensated for attending any of them. *Id.* at ¶¶ 23-26. Defendants' payroll records show their pattern and practice of reducing Plaintiff's hours to eliminate all overtime pay, but also to

eliminate many of Plaintiff's regular 40 hours. *Id.* at ¶¶ 19-22.

Plaintiff's damage chart compares the hours Plaintiff worked (as shown on the time clock report) and the hours for which Defendants compensated Plaintiff (as shown on Plaintiff's pay stubs and Defendants' payroll report). It identifies the amount of hours Defendants failed to compensate Plaintiff and calculates the wages owed, as well as associated damages. *Id.* at ¶¶ 19-22, 45. Additionally, Plaintiff's meeting chart identifies the meetings Plaintiff was required to attend, as identified through Facebook posts and Defendants' testimony, by date, approximate length, and the resulting wages and associated damages. *Id.*

## IV.    Conclusion and Requested Relief.

Defendants violated the FLSA and the Act by not paying Plaintiff wages for work performed. Defendants all but admit liability to Plaintiff in their Answer and in depositions. Because this request for summary judgment is based primarily on Defendants' sworn statements, and that Plaintiff has the only evidence of his hours worked, the Court should enter summary judgment for Plaintiff. Plaintiff requests that the Court find Plaintiff's unpaid wages damages to be $12,386.72 and that the Court further find that Plaintiff is entitled to an additional equal amount in liquidated damages under 29 U.S.C. § 216(b) and an additional amount equal to twice the unpaid wages as liquidated damages under A.R.S. § 23-364 against Defendants and in favor of Plaintiff. If this Motion is successful, Plaintiff will file an application with the Court to recover his attorneys' fees and costs under 29 U.S.C. § 216(b) and A.R.S. § 23-364.

RESPECTFULLY SUBMITTED this 16th day of March, 2017.

THE BENDAU LAW FIRM PLLC

/s *Clifford P. Bendau, II*
Clifford P. Bendau, II
Attorney for Plaintiff

**Certificate of Service**

I certify that on this 16th day of March, 2017, I electronically transmitted the attached document to the Clerk's Office using the CM/ECF system for filing and transmittal of a Notice of Electronic Filing to the following CM/ECF registrants:

Martin A. Bihn
BIHN & MCDANIEL, P.L.C.
2600 N. Central Ave, Suite 1775
Phoenix, AZ 85004

/s/*Clifford P. Bendau, II*
Clifford P. Bendau, II
Attorney for Plaintiff